**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JIMMY TRINETRA, | DOCKET NUMBER |
| Appellant, | SF-0752-18-0122-I-1 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: May 22, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Giancarlo Facciponte</u>, Esquire, Syracuse, New York, for the appellant.

<u>Steven Snortland</u>, Los Angeles, California, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to address the temporal proximity between the appellant's equal employment opportunity (EEO) activity and his removal, we AFFIRM the initial decision.

## BACKGROUND

The agency removed the appellant from his Supervisory Police Officer position based on the following charges: (1) Sleeping on Duty; and (2) Failure to Maintain a Requirement of Your Position. Initial Appeal File (IAF), Tab 6 at 15-20, Tab 7 at 8-10. Regarding the latter charge, the agency alleged that the appellant's position required that he maintain mental and emotional fitness, and that the Chief of Administrative Medicine deemed him psychologically unfit for his position after a psychologist reached the same conclusion based on a psychological fitness for duty evaluation. IAF, Tab 7 at 8, 21-23.

On appeal, the appellant disputed the agency's charges, claimed that there was no nexus between the misconduct and the efficiency of the service, and alleged that the action was based on harmful error, discrimination based on race and disability, and retaliation for EEO activity. IAF, Tab 1 at 5-6, Tab 17 at 10, Tab 29 at 2-3. The appellant also challenged the reasonableness of the penalty. IAF, Tab 1 at 6, Tab 29 at 2-3.

After a hearing, the administrative judge affirmed the removal. IAF, Tab 35, Initial Decision (ID) at 1, 34. The administrative judge found that the

agency proved the charges and that there was a nexus between the charges and the efficiency of the service. ID at 15-22. She also found that the appellant did not prove harmful error, race or disability discrimination, or retaliation for EEO activity. ID at 22-32. Finally, the administrative judge found that the penalty of removal was reasonable. ID at 32-34.

## ANALYSIS

The agency proved the charge of Sleeping on Duty.

The appellant asserts on review that the agency did not prove the charge of Sleeping on Duty because the only agency witness to the charge was a subject of the appellant's EEO complaint, the appellant was permitted to take a break at any time, his alleged sleeping on duty did not endanger the safety of another individual, and the administrative judge gave only "scant" consideration to his testimony and evidence. Petition for Review (PFR) File, Tab 9 at 13-14.

The administrative judge addressed many of these arguments in sustaining the charge, finding that the appellant testified that he was sitting at his computer on December 13, 2016, with the intention of reviewing work-related documents, when his supervisor approached him without his awareness and startled him by yelling his name. ID at 10, 16-17. The administrative judge found that this testimony was consistent with the appellant being on duty and asleep. ID at 16-17. The administrative judge also relied upon the appellant's contemporaneous statement to the supervisor that he was not on a break, as well as other statements he made to agency officials in which he did not claim that he was on a break. *Id.* In making these findings, the administrative judge considered the appellant's account and found it unworthy of belief, while finding the testimony of the supervisor who found the appellant asleep credible, based in part on their respective demeanors. *Id.*; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (stating that the Board must give deference to an administrative judge's credibility determinations when they are based,

explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). The appellant has not set forth sufficiently sound reasons to overturn these credibility determinations. To the extent that the administrative judge did not address all of the appellant's testimony and evidence, her failure to do so does not mean that she did not consider it. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

Regarding the appellant's claim that his supervisor, who was the only witness to the charged sleeping on duty, was a subject of his EEO complaint, the appellant had filed a June 14, 2016 formal EEO complaint that did not initially list the supervisor as one of the officials who had discriminated against him. IAF, Tab 19 at 30-32, 45-46, 48-64. However, the EEO Investigative Report, signed by the EEO Investigator on February 24, 2017, clarifies that the supervisor was involved in only one of the events that predated the December 13, 2016 sleeping incident when, on November 30, 2016, he gave the appellant a "short notice Special Physical Examination letter requiring him to undergo physical testing by December 1, 2016 as a condition of continued employment." *Id.* at 41, 43. This supervisor was listed as a witness in the report and indicated in sworn statements to the EEO Investigator that he was unaware of the appellant's EEO activity. *Id.* at 33; IAF, Tab 20 at 102, 104-05, 111. He also indicated that, although he issued the Special Physical Examination letter, he did not know the reasons why the examination was required and "was only the issuing authority" for the action. IAF, Tab 20 at 106, 109. Moreover, the supervisor was not asked at the hearing whether he was aware of any of the appellant's EEO activity before he found him asleep on December 13, 2016. Hearing CD, Track 03 (testimony of the supervisor). To the extent that the appellant suggests that the supervisor did not see him sleeping on duty but instead fabricated such an event because of the appellant's EEO activity, PFR File, Tab 9 at 14, there is no basis for such a

finding, *see Social Security Administration v. Carr*, 78 M.S.P.R. 313, 324-25 (1998), *aff'd*, 185 F.3d 1318 (Fed. Cir. 1999); *Redfearn v. Department of Labor*, 58 M.S.P.R. 307, 315 (1993).

Moreover, the appellant's claim that he did not endanger the safety of another employee is not material to whether the agency proved the charge, which merely alleged that he was sleeping on duty. IAF, Tab 7 at 8; *see Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 7 (2016) (requiring the Board to review the agency's decision on an adverse action solely on the grounds invoked by the agency); *cf. Gmitro v. Department of the Army*, 95 M.S.P.R. 89, ¶¶ 1-3, 19-20 (2003) (upholding the appellant's removal when the agency proved its charge of sleeping on duty where safety of personnel or property was endangered), *aff'd*, 111 F. App'x 610 (Fed. Cir. 2004).

The agency proved the charge of Failure to Maintain a Requirement of Your Position.

Regarding the charge of Failure to Maintain a Requirement of Your Position, the appellant relies on *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014), in asserting that the agency was required to prove a nexus between his disabilities, which he identified as Post Traumatic Stress Disorder and Anxiety, and observed deficiencies in his performance or a high probability of injury to himself or others. PFR File, Tab 9 at 7, 15.

The Board held in *Fox* that, to prove a charge of physical inability to perform, the agency needed to establish a nexus between the employee's medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others.[2] *Fox*, 120 M.S.P.R. 529, ¶ 25. Here, however, the agency did not charge the appellant with physical inability to perform. Instead, it

---

[2] In *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 5 n.3, the Board clarified that this general standard for proving the charge of inability to perform applies even when an employee occupies a position with medical standards or physical requirements, or that is subject to medical evaluation programs.

charged him with "Failure to Maintain a Requirement of Your Position."[3] IAF, Tab 7 at 8. In support of that charge, the agency alleged that the appellant's position required him to maintain mental and emotional fitness, and that the agency deemed him psychologically unfit for his position. *Id.* The appellant's position included a medical standard that required incumbents to "[p]ossess emotional and mental stability," and provided that "[a]ny emotional or mental condition which could cause the . . . officer to be a hazard to others or self during stress situations and physical altercations will disqualify." *Id.* at 61-62. As set forth by the administrative judge, to sustain a charge of Failure to Maintain a Requirement of Your Position, the agency must prove that the appellant's position required that he maintain medical standards and that he did not fulfill those requirements. ID at 17; *see Martin v. Department of Veterans Affairs*, 412 F.3d 1258, 1264-65 (Fed. Cir. 2005); *Paetow v. Department of Veterans Affairs*, 118 M.S.P.R. 462, ¶ 9 (2012); *Boulineau v. Department of the Army*, 57 M.S.P.R. 244, 246-48 (1993); *Wyse v. Department of Transportation*, 39 M.S.P.R. 85, 88, 91 (1988). Thus, the standard set forth in *Fox* does not apply. *See Guillebeau v. Department of the Navy*, 93 M.S.P.R. 379, ¶ 11 (2003) (requiring the Board to adjudicate an appeal solely on the grounds invoked by the agency without substituting what it considers to be a more appropriate charge), *aff'd*, 362 F.3d 1329 (Fed. Cir. 2004).

The appellant also contends on review that the mental fitness examination itself was not warranted, not conducted under the agency's procedures, and the

---

[3] In *Slater v. Department of Homeland Security*, 108 M.S.P.R. 419, ¶ 7 (2008), *overruled on other grounds by Haas*, 2022 MSPB 36, ¶ 14, the Board appeared to broadly state that a removal as "medically disqualified" is equivalent to a removal for inability to perform for medical reasons. In so doing, the Board cited *Cheers v. Office of Personnel Management*, 87 M.S.P.R. 591, ¶ 11 (2001), *Justice v. Department of the Navy*, 89 M.S.P.R. 379, ¶ 2-3 (2001), and *Cunningham v. Department of the Air Force*, 26 M.S.P.R. 599, 600-01 (1985). In those cases, however, the agencies' charges referenced both a medical disqualification and a medical inability to perform the duties of a position. *See Cheers*, 87 M.S.P.R. 591, ¶ 11; *Justice*, 89 M.S.P.R. 379, ¶ 2, *Cunningham*, 26 M.S.P.R. at 600-01. Here, by contrast, the agency's charge does not reference a physical inability to perform. IAF, Tab 7 at 8

result of discriminatory and retaliatory animus. PFR File, Tab 9 at 17. In particular, the appellant asserts that he merely informed a supervisor that he was experiencing stress in the workplace and filed a workers' compensation claim citing such stress, but there was no evidence of erratic behavior or worrisome changes in his demeanor that warranted such an examination. *Id.* at 17-18. He suggests that he did not pose a risk or threat to his own health or the safety of others sufficient to justify his removal. *Id.* at 15-16, 21.

To the extent that the appellant is challenging on review the agency's basis for the mental fitness for duty evaluation as harmful error or an improper disability-related medical examination, *see, e.g.*, *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶¶ 28-29 (2014), he did not raise such claims below. He did not make such an allegation in his initial appeal. IAF, Tab 1 at 5-7. In his prehearing submission, he noted that "[t]he Agency posits only that Appellant stated to [the Chief of Police] that he was experiencing symptoms of his disability, namely stress and anxiety, and that this was the reason for the . . . fit for duty evaluation request." IAF, Tab 17 at 9. Among the issues he identified, however, was whether the agency proved that he "failed to maintain a condition of his employment as stated in Charge 2 of the March 28, 2017 Proposed Removal," whether the agency engaged in harmful error when it failed to properly consider his written and oral replies to the proposal notice, and whether the agency "discriminate[d] against [him] based on his race (Asian), disability status, and/or retaliate against him based on his prior EEO activity" when it proposed his removal. *Id.* at 10. In his discussion of the above charge, the appellant asserted that the agency is required to engage in an individualized risk assessment regarding an employee's disability to determine if a reasonable accommodation can be made, and that the employer must assess whether the individual's disability causes him to present a significant risk of substantial harm to the individual's own person or that of others. *Id.* at 14. He claimed that any justification for the determination that he was unfit to perform the duties of his

position was meritless, speculative, and based on nothing more than him stating he was "stressed," and that the agency would not, therefore, be able to show a nexus between his disability and deficiencies in his performance with a high probability of injury to himself or others. *Id.* at 15. Within his summary of the expected testimony of two proposed witnesses, the appellant alleged that the witnesses had "knowledge related to the inappropriate issuance of fit for duty evaluations to Appellant during November of 2016 and January of 2017." *Id.* at 20. He further identified an exhibit that he claimed dealt directly with "the inappropriate fit for duty evaluations which were issued to him." *Id.* at 22. Nevertheless, in his arguments regarding disability discrimination, the appellant merely asserted that the agency had failed to accommodate him. *Id.* at 18.

In her Order and Summary of Prehearing Conference, therefore, the administrative judge identified the issues as encompassing whether the reasons for the removal were supported by preponderant evidence, whether there was a connection between the alleged misconduct and the efficiency of the service, whether the agency responsibly considered the relevant penalty factors and imposed a reasonable penalty, and whether the appellant could prove his affirmative defenses of harmful error, discrimination based on race and disability, and retaliation based on EEO activity. IAF, Tab 29 at 2-3. The administrative judge notified the parties that there were no other issues in the case, and that the parties would be limited to those issues at the hearing unless a new issue could not have been previously known despite the party's due diligence. *Id.* at 3. Although the administrative judge afforded the parties an opportunity to object to those rulings, *id.* at 8, the appellant did not object, Hearing CD, Track 01 (administrative judge's opening). Moreover, the appellant did not raise a claim similar to the one he is making on review in his closing argument. IAF, Tab 34. He has been represented by an attorney throughout these proceedings. IAF, Tabs 1, 17; PFR File, Tab 9. Accordingly, in the absence of a showing that this argument challenging the propriety of the mental fitness for duty evaluation is

based on new and material evidence not previously available despite the appellant's due diligence, we will not consider it for the first time on review. *See Holton v. Department of the Navy*, 123 M.S.P.R. 688, ¶ 18 (2016), *aff'd*, 884 F.3d 1142 (Fed. Cir. 2018); *Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶ 3 n.1 (2015).

Although the appellant asserts that the conclusions reached by the psychologist who conducted the mental fitness examination conflicted with other evidence in the record, PFR File, Tab 9 at 20-21, we disagree. In reaching her conclusion, the administrative judge properly weighed the medical evidence. ID at 18-21; *see Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 11 (2014) (recognizing that, in assessing the probative weight of medical opinions, the Board considers whether the opinion was based on a medical examination and provided a reasoned explanation for its findings as distinct from mere conclusory assertions, the qualifications of the expert rendering the opinion, and the extent and duration of the expert's familiarity with the treatment of the appellant), *overruled on other grounds by Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 14. For example, the administrative judge found that the recommendation was amply supported by recognized psychological tests and methodology, and that the psychologist's testimony was based on her extensive 25-year practice in evaluating the psychological fitness of law enforcement officers and consistent with her contemporaneous interview notes. ID at 11, 13-14, 19; *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The administrative judge considered a statement from the appellant's personal physician that he was fit to return to duty with no restrictions, but gave it no weight because he was board-certified in Internal Medicine, not Psychiatry, and there was no evidence that he considered the appellant's psychological or psychiatric fitness in making the recommendation. ID at 5, 19. She also found that the determination of an agency doctor of Internal Medicine that the appellant did not have a medical condition negatively affecting his cognition or behavior

was not an assessment of the appellant's mental health, and that doctor referred the appellant for a psychological examination because the doctor did not have psychological expertise. ID at 19. The administrative judge noted that the psychologist's conclusion that the appellant was mentally unfit to serve as a Supervisory Police Officer was not challenged by any other psychologist or psychiatric opinion. *Id.* Moreover, the psychologist adequately explained why she credited the appellant's oral self-report during her interview with him over any inconsistent responses he provided in his answers to certain written psychological tests. ID at 14; Hearing CD, Track 05 (testimony of the psychologist). In sum, the appellant has not established on review a basis to overturn these explained findings made by the administrative judge.

The appellant did not prove retaliation for EEO activity.

Regarding his retaliation claim, the appellant asserts that the administrative judge did not address the temporal proximity between his EEO activity and the actions taken by the agency. PFR File, Tab 9 at 22. He also claims that the testimony of the psychologist who conducted the mental fitness examination was "inherently suspect" because she was "unfamiliar with how to interpret, manage, or address issues of employees complaining of hostile workplace harassment or discrimination based on disability or race," and "seemed to indicate that such issues had never been brought to her attention previously during all 45,000 prior examinations she conducted." *Id.* (emphasis omitted). The appellant further contends that there was no evidentiary support for the administrative judge's finding that the prior disciplinary actions taken against him that were the subject of his EEO complaint resulted from a new supervisor's "no nonsense" management style. *Id.* at 23.

As with status-based discrimination cases, a violation of 42 U.S.C. § 2000e-16 is established if a prohibited consideration, such as retaliation for EEO activity, was a motivating factor in the contested personnel action, even if it

was not the only reason.[4] *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 41, 51 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. Evidence supporting an inference that retaliation was a motivating factor in an employment action may be direct or circumstantial. *Id.*, ¶ 42. Circumstantial evidence may include the following: (1) suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) evidence, whether or not rigorously statistical, that employees similarly situated to the appellant other than in the characteristic on which an employer is forbidden to base a difference in treatment received systematically better treatment; and (3) evidence that the agency's stated reason for its action is unworthy of belief, a mere pretext for discrimination. *Id.* Such evidence must be considered as a whole in determining whether the appellant has shown by preponderant evidence that retaliation was a motivating factor in the personnel action. *Gardner v. Department of Veterans Affairs,* 123 M.S.P.R. 647, ¶¶ 30-31 (2016), *clarified by Pridgen*, 2022 MSPB 31, ¶¶ 23-24. It must not be separated into direct and indirect evidence that is subject to different legal standards, nor is an appellant required to show a "convincing mosaic" of retaliation. *Id.*, ¶ 30.

In finding that the appellant did not prove retaliation for EEO activity, the administrative judge held that he did not support his speculations with evidence, he did not show that similarly situated employees who had not engaged in protected activity were treated differently, and the deciding official was not the subject of the appellant's EEO complaint or involved in any of his prior disciplinary actions. ID at 26-28. The administrative judge also appears to have

---

[4] The appellant's EEO complaint alleged that he was subjected to a hostile work environment based on race, reprisal, and age. IAF, Tab 6 at 109, Tab 19 at 30. Because it does not appear that the complaint included a claim of disability discrimination, we will not apply in this case the higher "but for" standard for cases involving claims of retaliation arising under the Americans with Disabilities Act Amendments Act of 2008. *See Haas*, 2022 MSPB 36, ¶¶ 31-34; *Pridgen*, 2022 MSPB 31, ¶¶ 30-36.

found that the prior disciplinary actions that were part of the basis for the appellant's EEO complaint were justified given the different management style of the proposing official of the removal action upon entering his position, who held supervisors and managers to a "high level of functioning." ID at 26-27.

Because the administrative judge did not address the timing of the EEO complaint as it related to the proposed and effected removal, we modify the initial decision by addressing it here. The appellant filed a formal EEO complaint on June 14, 2016. IAF, Tab 19 at 30. He amended the complaint on November 14, 2016, January 6, 2017, and February 16, 2017. *Id.*; IAF, Tab 6 at 109. The complaint challenged, among other things, the appellant's prior 5- and 14-day suspensions, as well as several investigations and the removal of his supervisory duties and responsibilities. IAF, Tab 7 at 73-79, Tab 19 at 30-31. The complaint identified the proposing official in the removal action as one of the officials who discriminated and retaliated against him, but not the deciding official. IAF, Tab 7 at 8-10, Tab 19 at 30-31. The agency proposed his removal on March 28, 2017, IAF, Tab 7 at 8, and removed him effective November 12, 2017, based on a November 3, 2017 decision notice, IAF, Tab 6 at 15-20.

Despite the above timing, which could be viewed as suspicious, the appellant has not identified ambiguous oral or written statements by the proposing official, behavior or comments by him toward other employees who filed EEO complaints, or other bits and pieces from which an inference of retaliatory intent might be drawn. *See Cole v. U.S. Postal Service*, 86 M.S.P.R. 572, ¶¶ 11-13 (2000) (recognizing that an agency may be found to have acted with retaliatory motives if an official with actual knowledge of an appellant's protected activity influenced the official who took the action), *abrogated on other grounds by Simien v. U.S. Postal Service*, 99 M.S.P.R. 237, ¶¶ 27-28 (2005). As the administrative judge found, the appellant did not present evidence that similarly situated employees who had not filed EEO complaints received better treatment. ID at 27-28.

Moreover, despite the appellant's assertion that the testimony of the psychologist who found him mentally unfit was suspect because she was unfamiliar with how to address employee complaints of hostile workplace harassment or discrimination based on disability or race, the psychologist testified that the bulk of the many evaluations she had conducted since 1992 had been pre-employment public safety hires. Hearing CD, Track 05 (testimony of the psychologist). Thus, any unfamiliarity she may have had with the term "EEO" may be due to the nature of her practice. In any event, she testified that she averages approximately 50 yearly fitness for duty retention interviews from the agency, she took into account his feelings of discrimination, which contributed to his stress, worries, fears, anxiety, anxiety attacks, and depression, and although she did not recall if other police officers she evaluated had filed discrimination complaints, she had heard of police officers filing complaints against their departments. *Id.* She also testified that the agency did not try to dictate to her the results of her evaluation, and that she made her own independent determination regarding the appellant. *Id.* In sum, the appellant has provided no basis for overturning the administrative judge's determination that the psychologist's recommendation was amply supported by recognized psychological tests and methodology, consistent with her contemporaneous interview notes, and unchallenged by any other psychologist or psychiatric opinion. ID at 19. He has not, therefore, shown that the agency's reason for the action was unworthy of belief.

Similarly, contrary to the appellant's contention that there was no evidentiary support for the administrative judge's finding that the disciplinary actions taken against him, including those addressed in his EEO complaint, resulted from a new supervisor's "no nonsense" management style, the record does support the administrative judge's finding in that regard. ID at 26-27; Hearing CD, Track 04 (testimony of a police captain), Track 10 (testimony of the proposing official). The administrative judge correctly found that the new police

chief had a different management style and was perceived as being "stern" with all his subordinates. ID at 27. Thus, the appellant has not shown that the administrative judge erred when she found that the appellant was not held to a higher standard than his coworkers. *Id.*

Under these circumstances, we find no basis to disturb the administrative judge's determination that the appellant did not prove that retaliation for EEO activity was a motivating factor in the removal decision. *See Gardner*, 123 M.S.P.R. 647, ¶¶ 30, 33-34 (declining to reweigh the evidence supporting a finding that the appellant did not prove that her EEO complaint was a motivating factor in her removal when she alleged on review that there was a close proximity in time between her EEO complaint and her proposed removal).

The appellant did not prove disability discrimination.

The appellant further asserts that he proved disability discrimination because the agency did not offer him a reasonable accommodation, follow procedures to ensure that his fitness for duty evaluations were conducted without discrimination based on his disabilities, or determine if a reasonable accommodation was appropriate before declaring him unfit and proposing his removal. PFR File, Tab 9 at 23-24. He also contends that the agency treated him differently from similarly situated coworkers. *Id.* at 24.

The administrative judge found, after assuming that the appellant was an individual with a disability, that he did not show that the action he appealed to the Board was based upon his degenerative disc disease, for which he had requested and was denied an accommodation.[5] ID at 28, 31. The administrative judge also held that, even if the action was based on his disability, he was not a qualified individual with a disability because he lacked a medical certification to perform

_____

[5] The appellant's accommodation request for an assignment to a different location, after the agency found him psychologically unfit for his Supervisory Police Officer position and assigned him to a desk job at a business office, appears to be based on his back and neck pain, anxiety, and the stress relating to the longer drive to that business office location. IAF, Tab 6 at 33-34, Tab 28 at 5.

the duties of a Supervisory Police Officer, i.e., the requisite skill, experience, education, and other job-related requirements of the position. ID at 31-32; *see Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 10 (2014). The appellant's arguments on review do not address or show error in these findings. To the extent the appellant is alleging that the agency committed harmful error by not ensuring that his fitness for duty evaluations were conducted properly or providing him a reasonable accommodation before declaring him unfit and proposing his removal, he did not raise such arguments below. IAF, Tab 17 at 16-17; ID at 22-25. In the absence of a showing that such arguments are based on new and material evidence not previously available despite his due diligence, the Board need not address them. *See Holton*, 123 M.S.P.R. 688, ¶ 18; 5 C.F.R. § 1201.115(d).

The appellant has not shown error in the administrative judge's penalty analysis.

Finally, the appellant asserts that, if the Board does not reverse the case based on a failure by the agency to prove its charges or a determination that he has proven his affirmative defenses, the maximum reasonable penalty is a suspension of between 20 and 45 days. PFR File, Tab 9 at 25. The appellant does not, however, explain why the penalty should be mitigated or show any error in the administrative judge's penalty analysis. Under these circumstances, we find no basis to disturb that determination. ID at 32-34; *see* 5 C.F.R. § 1201.114(b) (requiring that a petition for review be supported by references to applicable laws or regulations and by specific references to the record).

**NOTICE OF APPEAL RIGHTS**[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of

competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.